PETER J. KAKADELIS *v.* LOUIS A. DEFABRITIS ET AL.
(11205)

PETERS, HEALEY, PARSKEY, SHEA and GRILLO, Js.

Argued May 6—decision released August 30, 1983

*Ralph L. Friedland,* for the appellant (plaintiff).

*Ralph F. Scofield,* for the appellee (named defendant).

*Abram W. Spiro,* for the appellee (defendant Allan R. Capellaro).

ARTHUR H. HEALEY, J. This appeal contests the propriety of a summary judgment rendered for the defendants.[1] The memorandum of decision and the materials

---

[1] The record indicates that only the defendant Louis DeFabritis filed a motion for summary judgment. The judgment file, the court's memorandum of decision, and the appeal form filed by the plaintiff clearly indicate that judgment was rendered in favor of both defendants. If there were any dispute as to the propriety of the court's action in rendering judgment as to both defendants, the plaintiff had the burden of filing a motion to rectify pursuant to Practice Book § 3082. See *Kaplan* v. *Kaplan,* 186 Conn.

before the court on summary judgment disclose the following: In March, 1978, the plaintiff, a licensed real estate broker in the state of Connecticut doing business as Westview Associates, received written authorization from Martin O'Reilly to sell certain property located at 17½ Main Street, Danbury, at a commission of 10 percent of the sale price.[2] It is uncontested that this writing, which did not comply with the provisions set forth in General Statutes § 20-325a, was unenforceable under that statute. Acting pursuant to this agreement, the plaintiff brought the property to the attention of Elmer M. Seaman in February, 1979, who thereafter entered into an option agreement on June 7, 1979, to purchase the property. This option, which remained in effect until September 8, 1979, recognized Westview Associates as the real estate brokerage agency which brought about the option agreement. The option provided for a commission of 10 percent of the sale price ($450,000) to be paid to the plaintiff upon transfer of title. Upon the payment of additional consideration, this option was then extended until December 8, 1979, at which time the option expired.

After the expiration of the option agreement, the plaintiff claims that the seller and his attorney, the defendant Louis A. DeFabritis, orally requested the plaintiff to continue his efforts regarding the sale of the property to Seaman. The plaintiff then arranged for a meeting which occurred on January 10, 1980, between the seller, DeFabritis, and Seaman. At this meeting the plaintiff was informed by O'Reilly that he had another

387, 388 n.1, 441 A.2d 629 (1982). That no rectification was considered necessary by the plaintiff is also evident from our examination of the court file which discloses none. Accordingly, we treat this case as it has been presented to us on the record before us as an appeal from a summary judgment in favor of both defendants.

[2] Martin O'Reilly, who is not a party to this action, was the prospective seller of this property acting on behalf of the owner, Park Towers, Inc., as its president.

potential buyer and that he would contact Seaman to renew the previous option in the event that the other buyer did not purchase the property. Subsequently, DeFabritis informed the plaintiff that an exclusive listing agreement to sell the property had been given to Allan R. Capellaro, a relative by marriage of DeFabritis,[3] doing business as Capellaro Realty. The plaintiff claims that DeFabritis also informed him that if he wanted to receive any commission on the sale of the property to Seaman, he would have to contact Capellaro. Thereafter, the seller and Seaman entered into other option agreements for the sale of the property which did not recognize any broker as the procuring agent.[4]

The plaintiff then brought this action against DeFabritis and Capellaro alleging that they tortiously interfered with his business relationship with the seller of the property thereby depriving the plaintiff of the opportunity to pursue his negotiations between the seller and Seaman.[5] DeFabritis filed a motion for summary judgment which was granted by the court, *Chernauskas, J.*, stating, inter alia, that General Statutes § 20-325a (b) precluded the plaintiff's claim as a matter of law. On this appeal the plaintiff contends the following: (1) that the court erred in granting the motion for summary judgment; (2) that the plaintiff was

[3] The listing agreement between the seller and Capellaro was entered into on December 13, 1979, the date on which it became effective.

[4] In addition to the initial option agreement between the seller and Seaman, which recognized the plaintiff as the broker and was effective from June 7, 1979, to December 8, 1979 (including the extension), the record before us discloses at least two subsequent option agreements. The first was effective from January 22, 1980, to April 22, 1980, with a provision for extension to July 22, 1980, and the second was effective from July 16, 1980, to October 22, 1980.

[5] The property was eventually sold to Dancy Associates Limited Partnership of which Seaman is a general partner.

denied his right to a jury trial under the state and federal constitutions; and (3) that DeFabritis' actions are not protected by the attorney-client privilege.

The plaintiff contends that because his action is for tortious interference with business relations, it is not barred by General Statutes § 20-325a (b). We need not reach this contention in this case because quite apart from that claim, the court reached the correct result and we determine that summary judgment was properly granted. See *Satti* v. *Rago,* 186 Conn. 360, 369, 441 A.2d 615 (1982); *Cheshire* v. *McKenney,* 182 Conn. 253, 261, 438 A.2d 88 (1980); *Favorite* v. *Miller,* 176 Conn. 310, 317, 407 A.2d 974 (1978); *Morris* v. *Costa,* 174 Conn. 592, 598–99, 392 A.2d 468 (1978).

Only recently have we said: "This court has long recognized a cause of action for tortious interference with contract rights or other business relations. . . . While our cases have not focused with particularity on what acts of interference are tortious, we have made it clear that not every act that disturbs a contract or business expectancy is actionable. *Jones* v. *O'Connell,* [189 Conn. 648, 660–61, 458 A.2d 355 (1983)]. '[F]or a plaintiff successfully to prosecute such an action it must prove that the defendant's conduct was in fact tortious. This element may be satisfied by proof that the defendant was guilty of fraud, misrepresentation, intimidation or molestation . . . or that the defendant acted maliciously.' [Citations omitted.] *Kecko Piping Co.* v. *Monroe,* [172 Conn. 197, 201–202, 374 A.2d 179 (1977)]." (Citations omitted.) *Blake* v. *Levy,* 191 Conn. 257, 260–61, 464 A.2d 52 (1983). In *Blake,* we also determined that "[i]n an action for intentional interference with business relations . . . the better reasoned approach requires the plaintiff to plead and prove at least some improper motive or improper means. See, e.g., *United Wild Rice, Inc.* v. *Nelson,*

313 N.W.2d 628, 632–33 (Minn. 1982); *Anderson* v. *Dairyland Ins. Co.,* 97 N.M. 155, 159, 637 P.2d 837 (1981); *Straube* v. *Larson,* 287 Or. 357, 361, 600 P.2d 371 (1979); *Leigh Furniture & Carpet Co.* v. *Isom,* 657 P.2d 293, 302–304 (Utah 1982). '[A] claim is made out [only] when interference resulting in injury to another is wrongful by some measure beyond the fact of the interference itself.' *Top Service Body Shop, Inc.* v. *Allstate Ins. Co.,* 283 Or. 201, 209, 582 P.2d 1365 (1978)." *Blake* v. *Levy,* supra, 262.

The affidavits which are the basis for the summary judgment however, indicate no wrongful conduct on the part of either defendant. The affidavit of the plaintiff states merely that DeFabritis, the attorney, was aware of his relationship with the seller and "deprived" him of the opportunity to pursue the negotiations for sale of the property. Neither in this affidavit nor even in the complaint does the plaintiff claim that DeFabritis was motivated by his desire to help his relative who was also a real estate agent. In fact, the plaintiff's affidavit does not state that DeFabritis was instrumental in causing the owner to transfer the property listing to another real estate agent. The affidavit of DeFabritis states that he gave legal advice to his client, the owner, who had requested it. The affidavit of the owner, O'Reilly, declares that the selection of the new real estate agency with which DeFabritis' brother-in-law was connected was not influenced in any manner by DeFabritis and confirms that he requested legal advice from DeFabritis.

"When a motion for summary judgment is supported by affidavits and other documents, an adverse party, by affidavit or as otherwise provided by [Practice Book] § 380, must set forth specific facts showing that there is a genuine issue for trial, and if he does not so respond, the court is entitled to rely upon the facts stated in the

affidavit of the movant." *Bartha* v. *Waterbury House Wrecking Co.*, 190 Conn. 8, 11–12, 459 A.2d 115 (1983); *Rusco Industries, Inc.* v. *Hartford Housing Authority*, 168 Conn. 1, 5, 357 A.2d 484 (1975). "Mere assertions of fact, whether contained in a complaint or in a brief, are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court under Practice Book § 380." *Bartha* v. *Waterbury House Wrecking Co.*, supra, 12; see *Velardi* v. *Ryder Truck Rental, Inc.*, 178 Conn. 371, 375, 423 A.2d 77 (1979). The plaintiff never claimed in his affidavit that he could not for some reason "present facts essential to justify his opposition" which would authorize the court to deny the summary judgment motion or to grant a continuance to allow an opportunity to gather additional facts. Practice Book § 382; see *Batick* v. *Seymour*, 186 Conn. 632, 645, 443 A.2d 471 (1982); *Dorazio* v. *M. B. Foster Electric Co.*, 157 Conn. 226, 229–30, 253 A.2d 22 (1968). He chose to rest upon his assertions of the business relationship, its termination by the owner acting inferentially with the advice of DeFabritis, and the circumstance of the relationship of the new agent to DeFabritis. He never attempted to dispute the affidavits filed in behalf of the defendants. The bare assertions before the trial court would not have supported a judgment for the plaintiff and the summary judgment was, therefore, properly rendered.

What we have said is dispositive of this appeal and we need not pursue the plaintiff's remaining claim that the trial court's action in granting summary judgment denied his right of jury trial under the federal and state constitutions. "The motion for summary judgment is 'designed to eliminate the delay and expense incident to a trial when there is no real issue to be tried. Stephenson, Conn. Civ. Proc. (1966 Sup.) § 131.'

*Dorazio* v. *M. B. Foster Electric Co.,* 157 Conn. 226, 228, 253 A.2d 22 [1968]." *Dowling* v. *Kielak,* 160 Conn. 14, 16, 273 A.2d 716 (1970). "However, since litigants ordinarily have a constitutional right to have issues of fact decided by a jury; *Ardoline* v. *Keegan,* 140 Conn. 552, 555, 102 A.2d 352 [1954]; the moving party for summary judgment is held to a strict standard . . ." of demonstrating his entitlement to summary judgment. *Town Bank & Trust Co.* v. *Benson,* 176 Conn. 304, 307, 407 A.2d 971 (1978); see *Plouffe* v. *New York, N.H. & H. R. Co.,* 160 Conn. 482, 488, 280 A.2d 359 (1971). That standard has been met in this case. Therefore, there was no denial of a right to trial by jury.

There is no error.

In this opinion the other judges concurred.