[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION FOR SUMMARY JUDGMENT #109
Before this court is the plaintiffs motion for summary judgment on the defendant's counterclaim on the grounds that (1) the plaintiff was not negligent in failing to discover the employee's larcenous tendencies; (2) the defendant, in allowing an employee to handle negotiable instruments, violated its agreement with the plaintiff; and (3) the plaintiff cannot be held liable for the conduct of the employee which occurred when she no longer worked for the plaintiff.
The defendant alleges the following facts in its counterclaim. On or about August, 1997, the defendant, Shelton Laundry Company, and the plaintiff, Accountemps, a temporary employment agency, entered into an agreement whereby the plaintiff agreed to find and place a suitable person to work as a bookkeeper at the defendant's business. The plaintiff recommended Deborah Hopkins for the position and the defendant subsequently hired Hopkins. In or about November, 1998, the defendant discovered that in the course of her employment with the defendant, Hopkins forged signatures and endorsed checks made payable to the defendant without authorization and used the defendant's accounts without permission.
On June 4, 1999, the plaintiff filed a complaint against the defendant alleging that the defendant was indebted to it in the amount of $17,383.35 for temporary employee services it rendered to the defendant. On September 13, 1999, the defendant filed an answer denying the allegations set forth in the plaintiffs complaint. The defendant also included a counterclaim in which it asserts that the plaintiff negligently failed to investigate and screen Hopkins' background. According to the defendant, the plaintiffs negligence in failing to uncover Hopkins' larcenous tendencies resulted in losses sustained by the defendant. On October 13, 1999, the plaintiff replied to the defendant's counterclaim denying that it negligently failed to adequately investigate Hopkins' qualifications. In its answer to the counterclaim, and by way of a special defense dated July 20, 2000, the plaintiff alleges that the CT Page 4401 defendant was itself negligent in that it failed to adequately investigate Hopkins; failed to monitor its books, records and checks; failed to install proper safeguards on employees' use of checks; and failed to minimize its losses by accurate use of its books and ledgers. On March 13, 2001, the plaintiff filed its motion for summary judgment as to the defendant's counterclaim. The defendant filed its objection to the motion for summary judgment on June 4, 2001.
"Summary judgment shall be rendered forthwith if the pleadings, affidavits, and other documentary proof show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." (Internal quotation marks omitted.)QSP, Inc. v. Aetna Casualty Surety Co., 256 Conn. 343, 351, 773 A.2d 906
(2001).
The plaintiff moves for summary judgment on two grounds. First, the plaintiff argues that there is no evidence that it was negligent in investigating Hopkins' background because there is no evidence that it could have uncovered which would have disclosed that Hopkins had larcenous tendencies. Second, the plaintiff argues that the defendant violated its, agreement with the plaintiff when it allowed Hopkins to handle negotiable instruments and thus created the risk that led to its losses. In the alternative, the plaintiff argues that it is entitled to summary judgment for all the losses that the defendant sustained after February 21, 1998, the date that the defendant hired Hopkins as a permanent employee and she was no longer the plaintiffs employee.
In opposition, the defendant argues that the plaintiff had a duty to thoroughly screen and investigate Hopkins' background and credentials before placing her as a bookkeeper with the defendant. In addition, the defendant argues that it did not violate its agreement with the plaintiff with respect to Hopkins handling negotiable instruments because Hopkins never had access to, or authority to handle or transport negotiable instruments, nor did she have any authority, express or implied, to execute company checks. The defendant does not respond to the plaintiff's argument regarding its contention that it cannot be held liable for losses that occurred after the date Hopkins became the defendant's full-time employee.
"Existing Connecticut precedents impose only a limited duty to take action to revent injury to a third person. Our point of departure has been that absent a special relationship of custody or control, there is no duty to protect a third person from the conduct of another. . . . In any determination of whether even a special relationship should be held CT Page 4402 to give rise to a duty to exercise care to avoid harm to a third person, foreseeability plays an important role. Duty is a legal conclusion about relationships between individuals, made after the fact, and imperative to a negligence cause of action. The nature of the duty, and the specific persons to whom it is owed, are determined by the circumstances surrounding the conduct of the individual. . . . Although . . . no universal test for [duty] has ever been formulated . . . our threshold inquiry has always been whether the specific harm alleged by the plaintiff was foreseeable to the defendant. . . . Thus, initially, if it is not foreseeable to a reasonable person in the defendant's position that harm of the type alleged would result from the defendant's actions to a particular plaintiff, the question of the existence of a duty to use due care is foreclosed, and no cause of action can be maintained by the plaintiff." (Citations omitted; internal quotation marks omitted.) Fraserv. United States, 236 Conn. 625, 632-33, 674 A.2d 811, cert. denied,519 U.S. 872, 117 S.Ct. 188, 136 L.Ed.2d 126 (1996).
In the context of negligent hiring, courts generally rule that an employer cannot be held liable for the conduct of its employees that injure a third party if the employer could not have foreseen that the employee would engage in such conduct. See, e.g., Barnett v. Woods, judicial district of Fairfield at Bridgeport, Docket No. 371822 (July 31, 2000, Skolnick, J.) (27 Conn.L.Rptr. 596, 597) ("Under Connecticut law, a defendant does not owe a duty of care to a plaintiff to protect her from [an] employee's actions unless the defendant knows or has reason to know that the employee has a propensity to engage in tortious conduct. . . ." (Internal quotation marks omitted.)
In the present case, in support of its argument that it was not negligent because it could not have foreseen Hopkins' larcenous tendencies, the plaintiff submits an affidavit by Christine Gardiner, an Accountemps branch manager. Gardiner attests that she assigned Hopkins to work for the defendant "[a]fter an investigation which included checking with prior employers who did not indicate any problems relating to Ms. Hopkins' honesty." (Gardiner Affidavit, ¶ 4.) The plaintiff also submits a criminal record report, printed on September 11, 2000, after Hopkins had been arrested and convicted of larceny and forgery, which indicates that Hopkins had no criminal record prior to that conviction. (Plaintiffs Memorandum, Exhibit 2.)
Although the defendant asserts that the plaintiff was negligent in its hiring and placement of Hopkins because it should have discovered her larcenous tendencies prior to placing her with the defendant, it has not offered any evidence to show what the plaintiff could have uncovered regarding Hopkins' background, or where it could have looked in order to anticipate her larcenous tendencies. The defendant has not produced any CT Page 4403 factual evidence that the plaintiff could have uncovered in the course of its investigation from which it could have foreseen Hopkins' future criminal activities.
In the alternative, the plaintiff argues that it is entitled to summary judgment on the counterclaim because the evidence establishes that the defendant violated its agreement with the plaintiff by letting Hopkins handle negotiable instruments.[1] The "Terms and Conditions of Assignment" agreement, which the plaintiff has attached to its motion, states: "An accountemps employee may not handle cash, negotiables or other valuables without the written consent of accountemps and then only under your direct supervision. An accountemps employee may not, under any circumstances, transport or convey monies, securities or any negotiable instruments (including, but not limited to, delivering bank deposits to a bank or other institution)." (Plaintiff's Memorandum, Exhibit 1.)
The defendant counters that it did not violate its agreement with the plaintiff because Hopkins never had access to and never handled or transported negotiable instruments. The defendant submits an affidavit from Todd Demarco, CEO of Shelton Laundry, in which he argues that Hopkins did not have express or implied authority to execute company checks, nor was she permitted to undertake company banking business. (Demarco Affidavit, ¶ 11.)
"When a motion for summary judgment is supported by affidavits and other documents, an adverse party, by affidavit or as otherwise . . . must set forth specific facts showing that there is a genuine issue for trial, and if he does not so respond, the court is entitled to rely upon the facts stated in the affidavit of the movant." (Internal quotation marks omitted.) Kakadelis v. DeFabritis, 191 Conn. 276, 280-81, 464 A.2d 57
(1983). Here, the plaintiff has presented no evidence that Hopkins ever handled negotiable instruments or that she had any responsibility with regards to the defendant's financial matters.
Finally, the plaintiff argues that even if the court determines it is not entitled to summary judgment on the counterclaim in its entirety, it cannot be held liable for losses which occurred after February 21, 1998. On this date, Hopkins became a full-time employee of the defendant. (Gardiner Affidavit, ¶ 6.) Prior to this date, Hopkins was officially employed by the plaintiff Accountemps' assignment contract provides, in part, that until permanent assignment: "The person assigned is an employee of accountemps and shall not be deemed to be your employee." (Plaintiffs Memorandum, Exhibit 1.) In addition, the plaintiff contends that when the defendant hired Hopkins as a permanent employee in February, 1998, it did not ask the plaintiff for any reference or other evaluative information regarding Hopkins nor did it ask the plaintiff to screen or investigate CT Page 4404 Hopkins. (Gardiner Affidavit, ¶ 7.) Hopkins' larceny and forgery were not discovered for a full nine months after the defendant hired her on a full-time basis, in October, 1998.
The plaintiffs affidavit conclusively states that Hopkins was no longer an employee of the plaintiff as of February 21, 1998, and, therefore, this court concludes that the plaintiff can not be held liable for the actions of an individual who is not their employee.
Accordingly, the plaintiffs motion for summary judgment is granted.
BY THE COURT
 ___________________ Skolnick, J.